# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK

**Syracuse Office**
4 Clinton Square
3rd Floor
Syracuse, NY 13202
(315) 701-0080
(315) 701-0081 Fax

**Albany Office**
39 N. Pearl Street
5th Floor
Albany, NY 12207
(518) 436-1850
(518) 436-1780 Fax

Lisa Peebles,
Federal Public Defender

Respond to Albany Office

E-Mail tim_austin@fd.org

August 16, 2011

Hon. Gary L. Sharpe, U.S. District Judge
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

**Re:**   United States v. Craig E. Witt
         Case No. 10-CR-366 (GLS)

Dear Judge Sharpe:

This letter is a further submission pursuant to the Court's text order of August 10, 2011, in anticipation of the oral argument of August 18, 2011 on Mr. Witt's pending pretrial motions.  With respect to the issues which the Court has directed the parties to be prepared to address at oral argument, Mr. Witt submits the following.

**1.  Whether the VA's original finding of incompetence constituted an adjudication under 18 U.S.C. §922(g)(4).**

Mr. Witt has no further submission at this moment beyond what already is part of the motion record.

**2.  Whether, on May 7, 2009, the date Mr. Witt is alleged to have illegally possessed firearms and ammunition, the requisite as-applied due process notice and opportunity for a hearing had been supplied by post-deprivation conversations with ATF and FBI authorities.**

No.  Assuming the absence of adequate procedural due process protections surrounding the VA decisions which the government contends resulted in the forfeiture of Mr. Witt's

Second Amendment right to keep and bear arms and triggered federal criminal liability, Mr. Witt's post-deprivation communications with ATF and FBI cannot, and did not, satisfy the requirements of due process.

### *Facts relating to "post-deprivation" law enforcement communications:*

After Mr. Witt's attempt to purchase a firearm at Walmart was denied on May 29, 2008, he protested the basis for the denial and attempted to challenge it. The government has cited certain communications between the FBI's Criminal Justice Information Services Division [CJIS] (through its National Instant Criminal Background Check System [NICS] Section), and one or more employees of the ATF.

#### *FBI communication:*

The government's Exhibit F contains a November 17, 2008 letter from the FBI CJIS office memorializing the FBI's communications with Mr. Witt. That letter informed Mr. Witt, in response to his earlier inquiries regarding the denial of his firearm purchase, that either he or "another individual with a similar name and/or similar descriptive features" were matched with the firearms prohibition category of being "Adjudicated mental defective." The letter provided Mr. Witt with FBI's description or definition of that prohibition. The letter included the following unclear statement:

> Please be advised, the term "adjudicated as a mental defective" includes any person who is found incompetent by the Veterans Administration under Title 38, Code of Federal Regulations, Section 3.353 will be considered to have been adjudicated as a mental defective for purposes of the Gun Control Act.

Government's Exhibit F. The letter further referred to "Section 3.353" for a definition of "mentally incompetent person". The letter then went on to discuss the FBI's interpretation of the effect which the NICS Improvement Amendments Act might have on "a person [who] had been adjudicated as a mental defective," and the possibility of a "relief of disability" under 18 U.S.C. §922(g)(4). Id. The letter then informed Mr. Witt that the FBI "can take no further action on your appeal at this time," and that he would have to contact the VA in order to "further your appeal." Id.

#### *ATF communications:*

The government's motion response also includes a declaration of ATF Special Agent Jason Stocklas created in response to Mr. Witt's motion. See, Government's Exhibit H. In that declaration, SA Stocklas memorializes, among other things, SA Stocklas's

expressed opinion to Mr. Witt that Mr. Witt was a prohibited person and SA Stocklas's receipt and interpretation of VA records.  Exhibit H.

Attached to Exhibit H is an email exchange between Mr. Witt and SA Stocklas in which Mr. Witt asked for SA Stocklas's help in getting his "FFL Buying rights back", and SA Stocklas responded that he had passed along Mr. Witt's VA records to ATF's legal counsel, that he considered it to be his job "to get to the bottom of this," and that pending the completion of his investigation, based upon the FBI's interpretation, he considered Mr. Witt to be prohibited from purchasing or possessing firearms.  Exhibit H.

> ***Argument: Due process requires that Mr. Witt was entitled to PRE-DEPRIVATION notice and an opportunity to be heard relative to the deprivation of his constitutional right to keep and bear arms and to the criminal-liability-imposing effect of the VA's decision; post-deprivation remedies would be insufficient on the facts of this case; and, in any event, the communications by FBI and ATF to Mr. Witt did not constitute post-deprivation notice and opportunity to be heard regarding the deprivation.***

In Mathews v. Eldridge, the Supreme Court stated:

> the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Applying the Mathews test, the Supreme Court has noted that "the Court usually has held that the Constitution requires some kind of a hearing *before* the [government] deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127-128 (1990) (citing cases) [emphasis in original].  "An essential principle of due process is that a deprivation of life, liberty, or property '***be preceded*** by notice and opportunity for hearing appropriate to the nature of the case.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985), citing, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

The Court in Zinermon provided examples of the limited circumstances in which it has not required a pre-deprivation hearing or has held post-deprivation remedies to be sufficient:

3

> In some circumstances..., the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process. See, *e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (" '[T]he necessity of quick action by the State or the impracticality of providing any predeprivation process' " may mean that a postdeprivation remedy is constitutionally adequate, quoting *Parratt*, 451 U.S., at 539, 101 S.Ct., at 1913); *Memphis Light,* 436 U.S., at 19, 98 S.Ct., at 1565 ("[W]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures ... are sufficiently reliable to minimize the risk of erroneous determination," a prior hearing may not be required); *Ingraham v. Wright*, 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977) (hearing not required before corporal punishment of junior high school students); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 619-620, 94 S.Ct. 1895, 1906, 40 L.Ed.2d 406 (1974) (hearing not required before issuance of writ to sequester debtor's property).

Zinermon v. Burch, 494 U.S. 113, 127-128.

In Zinermon, the Supreme Court observed that there is no distinction between the deprivation of a liberty interest and the deprivation of property for the purpose of analyzing the adequacy of post- versus pre-deprivation remedies. Id. at 131-132. As applicable in the context of the deprivation of a liberty interest, Zinermon establishes that "[i]n situations where the [government] feasibly can provide a predeprivation hearing before [depriving a liberty interest], it generally must do so regardless of the adequacy of a postdeprivation... remedy to compensate for the [deprivation of liberty]. Id., citing cases.

Where a deprivation of a person's liberty interest is not unpredictable (such as when the government would commence a formal proceeding the direct result of which could be the deprivation of a constitutional right); and pre-deprivation process was not impossible (such as when a formal proceeding was actually conducted at which the effect of the proceeding on Mr. Witt's constitutional rights and criminal exposure easily could have been discussed); and there is no legitimate claim that the deprivation occurred as a result of "unauthorized" government conduct, a due process violation is establish notwithstanding the adequacy of post-deprivation remedies. Id. at 136-139.

Mr. Witt's case simply is not the type of case in which the government had to move quickly and, as a consequence, simply had no time to provide pre-deprivation due process notice and opportunity for a hearing, or in which it was simply impracticable for the government to provide any pre-deprivation due process. The initial VA proceeding

occurred over months and months.  At any point prior to the close of that proceeding, the government could have provided Mr. Witt with notice that its decision would affect a valuable constitutional right and expose him to criminal liability sufficient to allow him to decide whether to challenge the decision–precisely the type of constitutionally necessary due process notice and opportunity for a hearing provided by the VA <u>now</u> as a statutory requirement.

Nevertheless, assuming adequate post-deprivation remedies otherwise might have satisfied constitutional due process in this case, the communications to Mr. Witt by the FBI and ATF fall far short of satisfying due process.  Those communications are merely the memorialization of law enforcement agency examination of information in a law enforcement database and, from a law enforcement standpoint, a statement of opinion to Mr. Witt about the significance of that information.  At most, the FBI's communication with Mr. Witt advises him that the presence of his name in the NICS database appears not to be a data-entry mistake, and ATF's communication with Mr. Witt is a reaffirmation of the FBI's information-gathering.

Most importantly, no aspect of those communications provided or could have provided Mr. Witt with a procedural mechanism–a right to be heard–through which he could have challenged the decisions of the VA <u>before</u> he suffered irreparable adverse consequences.  Indeed, both the FBI and ATF ascribed those adverse consequences to those decisions <u>at the very moment</u> of those communications.  Both the FBI and ATF opined that Mr. Witt had already become a prohibited person; and he already had been deprived the right to purchase a firearm.

At best, regarding an opportunity to challenge the underlying VA decisions, the FBI and ATF both told Mr. Witt essentially that he was barking up the wrong tree and that he would have to go to the VA to "further" his appeal.  At the time of those communications, there was no process available through the VA to challenge the merits of the underlying decisions.  There was–and is–no mechanism available through the VA for Mr. Witt to return himself to his pre-deprivation, non-prohibited status.

The FBI and ATF communications did not satisfy due process, and they did not contribute to constitutionally sufficient due process.

It bears noting that the government has not suggested that the FBI and ATF communications could have rectified a lack of due process at the VA "appropriate to the nature of the case."  <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950).  Indeed, the government has argued consistently that Mr. Witt was never entitled to due process "appropriate to the nature of the case."  The government has argued that Mr. Witt was not entitled to notice, as a matter of constitutional due process, that would

have advised him of the effect of the VA decision on his constitutional rights and criminal liability.  Instead, as the government argues, a notice <u>wholly silent</u> regarding an effect on Mr. Witt's constitutional right and criminal exposure was entirely adequate to trigger a waiver of a constitutional right and exposure to criminal liability, however unwittingly it might have come about.  From that, the government has staked out the firm position that Mr. Witt became prohibited and subject to criminal prosecution, if in possession of a firearm, from the moment of the initial VA determination forward, or for the last 8 years.  It would be entirely inconsistency for the government now to argue that Mr. Witt was entitled to notice and a hearing related to actual effect the government now gives to the VA decisions, and that communications with the FBI and ATF somehow now contribute to that.

**3.  Whether the Court has authority under 28 U.S.C. §636 to solicit a report from Judge Treece concerning the circumstances surrounding the insertion/specification of the date on or before which the warrant was to be executed.**

Section 636 does not appear to address directly the authority of the District Court Judge to solicit a report from the Magistrate Judge about the factual circumstances under which the Magistrate Judge established the "deadline" by which the search shall have been conducted or under which the Magistrate Judge physically inserted the date in the search warrant.

I thank the Court for its consideration.

Very truly yours,

*/s/Timothy E. Austin*

TIMOTHY E. AUSTIN
Assistant Federal Public Defender

cc:   Carlos Moreno, AUSA
      Craig Witt

## CERTIFICATE OF SERVICE

      I, Timothy E. Austin, Esq., attorney of record for the above-named defendant, hereby certify that on August 16, 2011, I electronically filed the foregoing letter-memorandum with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Carlos Moreno, Assistant U.S. Attorney.

                                              LISA PEEBLES
                                              Federal Public Defender

                              By:   */s/Timothy E. Austin*
                                      Timothy E. Austin, Esq.
                                      Assistant Federal Public Defender
                                      Attorney for Defendant
                                      Bar Roll # 508098
                                      39 North Pearl Street
                                      Albany, New York 12207
                                      Tel:  (518) 436-1850
                                      Fax: (518) 436-1780
                                      Email:  tim_austin@fd.org